## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF NEW JERSEY; PHILIP D. MURPHY, in his Official Capacity as Governor of New Jersey; GURBIR S. GREWAL, in his Official Capacity as Attorney General of New Jersey, <br><br> Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1.      In this action, the United States seeks a declaration invalidating, and order permanently enjoining, the enforcement of New Jersey Attorney General Law Enforcement Directive 2018-6, as revised September 27, 2019 (the "Directive"). Ex. 1. The Directive is preempted by federal law and impermissibly discriminates against the United States, thus violating the Supremacy Clause of the United States Constitution.

2.      The United States has undoubted, preeminent authority to regulate immigration. This authority is inherent in the United States' status as a sovereign nation and is reflected in the Constitution and numerous acts of Congress.  New Jersey has no authority to enforce laws and policies that obstruct or otherwise conflict with federal immigration enforcement efforts.[1]

3.      The Directive has both the purpose and effect of obstructing federal immigration enforcement in New Jersey.  Specifically, it prevents state, county, and local law enforcement officials from providing the United States with necessary information about individuals in their custody who are subject to removal proceedings or who are being investigated for violations of federal immigration law.

4.      The Supremacy Clause does not allow New Jersey to obstruct the enforcement of federal laws that Congress has enacted under its constitutional authority to regulate immigration.  The Directive is therefore invalid.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345.

6.      Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b) because Defendants reside within the District of New Jersey and because a substantial part of the acts or omissions giving rise to this Complaint arose from events occurring within this district.

---

[1] The Directive has the force of law in New Jersey.  *See O'Shea v. Twp. of West Milford*, 410 N.J. 371, 381, 982 A.2d 459, 465 (N.J. Super. Ct. App. Div. 2009).

7.      The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, as well as its inherent equitable powers.

## PARTIES

8.      Plaintiff, the United States, regulates immigration under its constitutional and statutory authorities.  It enforces the immigration laws through its Executive Branch agencies, including the Departments of Justice and Homeland Security (DHS).  DHS includes the component agencies U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP).

9.      Defendant State of New Jersey is a state of the United States.

10.     Defendant Philip D. Murphy is the Governor of the State of New Jersey and is being sued in his official capacity.

11.     Defendant Gurbir S. Grewal is the Attorney General for the State of New Jersey and is being sued in his official capacity.

## FEDERAL IMMIGRATION LAW

12.     The Government of the United States has "broad, undoubted" inherent power as a sovereign nation, and enumerated constitutional and statutory power, to regulate matters pertaining to immigration and the status of aliens.  *Arizona v. United States*, 567 U.S. 387, 394 (2012) (citing *Toll v. Moreno*, 458 U.S. 1 (1982)); *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893) ("The right of a nation to expel or deport foreigners who have not been naturalized, or

taken any steps towards becoming citizens of the country . . . is as absolute and unqualified, as the right to prohibit and prevent their entrance into the country.").

13.     The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

14.     The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

15.     Based on its enumerated powers and its constitutional power as a sovereign to control and conduct relations with foreign nations, the United States has broad authority to establish immigration laws, the execution of which the States cannot obstruct or discriminate against.  *See Arizona v. United States*, 567 U.S. 387, 394-95 (2012*); accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444-47 (Scalia, J., concurring).

16.     Congress has exercised its authority to make laws governing the admission, presence, status, and removal of aliens within the United States by enacting various provisions

of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, 100 Stat. 3359, codified at 8 U.S.C. § 1324a *et seq.*, and other laws regulating immigration.

17.     These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, removable from the United States under the immigration laws.  *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

18.     Congress also has codified basic principles of cooperation and comity between state and local authorities and the United States.  For example, the Federal Government allows states to assume custody over removable aliens who have been convicted of state or local offenses.  *See id.* § 1231(a)(4)(A).  Federal law generally contemplates that such aliens will serve their state or local criminal sentences before being subject to removal, but then will be taken into federal custody upon the expiration of their state prison terms.  *See id.* §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4).

19.      "Consultation between federal and state officials is an important feature of the immigration system."  *Arizona*, 567 U.S. at 411.  Congress therefore has directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status . . . of an individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS]

regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Congress also expressly authorized states and localities "to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

20.     Among the tools DHS uses to facilitate the sort of cooperation that Congress contemplated between law enforcement agencies and federal immigration officials is the "detainer" request. *See* Sample DHS Form I-247A, Ex. 2. Detainers are issued pursuant to the Secretary of Homeland Security's power under 8 U.S.C. § 1103(a)(3), to provide regulations "necessary to carry out his authority," and from DHS's general authority to arrest and detain individuals subject to removal or removal proceedings, 8 U.S.C. §§ 1226 and 1357. *See* 8 C.F.R. § 287.7. The detainer notifies law enforcement officials that DHS has found probable cause that the person subject to the request is a removable alien. *Id.* It then requests that law enforcement officials (1) notify the relevant DHS component at least 48 hours before the alien is released from state/local custody; (2) maintain custody of the individual for a period not to exceed 48 hours beyond the time at which he is expected to be released from custody to allow DHS the opportunity to assume custody; (3) serve the alien with a copy of the detainer; (4) relay the detainer to any other law enforcement agency to whom the alien is transferred; and (5) notify DHS in the event of the alien's death, hospitalization, or transfer. *Id.*

21.     DHS performs important law enforcement activities in New Jersey.  In Fiscal Year 2018, DHS apprehended about 3,350 aliens in New Jersey.  About 88% of those apprehended in Fiscal Year 2018 had past convictions or pending criminal charges.  In Fiscal Year 2019, DHS apprehended almost 2,800 aliens in New Jersey.  About 85% of those apprehended in Fiscal Year 2018 had past convictions or pending criminal charges.

## NEW JERSEY ATTORNEY GENERAL LAW ENFORCEMENT DIRECTIVE 2018-6

22.     On November 29, 2018, the New Jersey Attorney General issued the Directive, which took effect on March 15, 2019 and was revised on September 27, 2019.  The Directive limits state and local cooperation with "federal immigration authorities" in a number of important ways.  Directive § II.B.

23.     The Directive expressly prohibits, except in narrow circumstances, certain information sharing absent a "valid judicial warrant or other court order."  *See* Directive § II.C.

24.     The Directive also prohibits New Jersey law enforcement agencies from "[p]roviding notice of a detained individual's upcoming release from custody" to assist "federal immigration authorities when the sole purpose of that assistance is to enforce federal civil immigration law."  Directive § II.B.5.  The Directive contains several limited exceptions if the detainee is charged with, or been convicted of, a narrow subset of crimes or "is subject to a Final Order of Removal that has been signed by a federal judge and lodged with the county jail or state prison where the detainee is being held."  *Id.*

25.     On information and belief, New Jersey does not impose this restriction on federal authorities when they are engaged in activities other than immigration enforcement, nor does it impose the restriction on other government authorities.

26.     If a "federal civil immigration authorit[y] request[s]" to "be notified of the detainee's upcoming release from custody," or to "continue detaining the detainee past the time he or she would otherwise be eligible for release," the Directive requires New Jersey agencies to "promptly notify a detained individual, in writing and in a language the individual can understand."  Directive § VI.A.

27.     On information and belief, New Jersey does not require notification to a detainee if another agency or the general public, as applicable, seeks to be notified of the detainee's upcoming release from custody, or continue detaining the detainee past the time he or she otherwise would be eligible for release.

## INTERFERENCE WITH, AND DISCRIMINATION AGAINST, FEDERAL IMMIGRATION AUTHORITIES

28.     The Directive impermissibly prohibits or restricts basic cooperation with federal officials and discriminates against federal immigration authorities.

29.     Federal law contemplates that removable aliens who violate state law will be taken into state custody and complete their state sentences before being detained by the United States and that federal immigration detention for immigration proceedings or for removal will begin upon such an alien's release from state custody.  8 U.S.C. § 1226(c); § 1231(a)(4).  The Directive conflicts with federal law by prohibiting state, county, and local officials from notifying federal

immigration officials when a detained individual is scheduled to be released from state custody, absent certain narrow exceptions.[2]  *See* Directive § II.B.5.

30.    The Directive further conflicts with federal law by forbidding state, county, and local law enforcement officials from communicating with federal immigration officials about transfers of detained aliens to federal custody.  Since issuance of the Directive, New Jersey law enforcement agencies, with limited exceptions, have not communicated to DHS the release date or home address of individuals that DHS has reason to believe are aliens removable from the United States.  *See* Directive §§ II.B.2, II.B.5.  Nor have New Jersey law enforcement agencies transferred such aliens to DHS custody, even where DHS presents a civil administrative warrant of arrest or removal—the arrest mechanism that Congress elected to codify into federal law, which does not require separate authorization or approval of a federal judge.  *See* 8 U.S.C. §§ 1226(a), 1231(a).

31.    By restricting information sharing and thus hindering the transfer to DHS of aliens in state, county, or local custody upon their release through the means provided for by federal law, the Directive effectively requires federal immigration officers either to engage in difficult

_____

[2] Section II.B.5. of the Directive allows three exceptions: (1) if the detainee has been charged or convicted of a violent or serious offense; (2) if, in the past five years the detainee was convicted of an indictable crime other than a violent or serious offense; and (3) if there is a Final Order of Removal signed by a federal judge.  Other narrow exceptions also apply.  *See* Directive § II.C.  Even with the enumerated exceptions, however, "nothing in th[e] Directive prohibits state, county, and local law enforcement agencies from imposing their own additional restrictions on providing assistance to federal immigration authorities so long as those restrictions do not violate federal or state law or impede the enforcement of state criminal law."  Directive at 2.

and dangerous efforts to re-arrest aliens who previously were in state, county, or local custody—

endangering immigration officers, the alien at issue, and others who may be nearby.

Alternatively, the Directive creates a situation where federal immigration officers may

determine that it is not appropriate to transfer an alien to state, county, or local custody in the

first place, in order to comply with their mission to enforce the immigration laws.

32.     Moreover, the Directive's notification requirements, *see* Directive § VI.A, serve to

alert aliens that "federal civil immigration authorities" may be interested in detaining them, thus

further thwarting DHS's ability to take such aliens into custody, forcing DHS to engage in

difficult and dangerous efforts to re-arrest aliens who previously were in state custody, and

endangering immigration officers, the alien at issue, and others who may be nearby.  New Jersey

has no lawful interest in assisting removable aliens to evade federal law enforcement.

33.     The Directive's restrictions discriminate against federal immigration authorities

because they do not apply to other federal authorities, state agencies or, as applicable, the

general public.

34.     Since enactment of the Directive, on November 29, 2018, and its subsequent

revision, on September 27, 2019, federal immigration enforcement activities have been

negatively impacted in New Jersey.

35.     The lack of cooperation fostered by the Directive has resulted in federal agents'

requests for assistance being unanswered by local law enforcement, prompting officer and

public safety concerns and a reallocation of ICE resources to protect federal agents in the field.

36.     On multiple occasions in 2019, New Jersey law enforcement agencies did not provide DHS with the latest information regarding the release dates and times for aliens (or suspected aliens) who were convicted or charged with crimes including fraud, terroristic threats, and invasion of privacy.

37.     Between Fiscal Year 2018 and Fiscal Year 2019, the number of aliens apprehended by ICE in New Jersey decreased by 16%.  Among the aliens that were apprehended, 88% were either convicted criminals or had pending criminal charges.

## COUNT ONE
### *Preemption*

38.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 of this Complaint.

39.     Sections II.B.5 and VI.A of the Directive violate the Supremacy Clause because they are preempted by federal law.

## COUNT TWO
### *Violation of Intergovernmental Immunity*

40.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 of this Complaint.

41.     Sections II.B.5 and VI.A of the Directive violate the Supremacy Clause by obstructing federal immigration operations and discriminating against federal immigration authorities.

**PRAYER FOR RELIEF**

The United States respectfully requests that this Court:

1.      Enter a judgment declaring that the Directive violates the Supremacy Clause and is therefore invalid;

2.      Permanently enjoin Defendants, as well as their successors, agents, and employees, from enforcing the Directive;

3.      Award the United States its costs in this action; and

4.      Award any other relief this Court deems just and proper.

DATED: February 10, 2020        Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

CRAIG CARPENITO
United States Attorney

ALEXANDER K. HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

/s/    *Joseph J. DeMott*
JOSEPH J. DEMOTT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 514-3367
E-mail: joseph.demott@usdoj.gov

*Counsel for the United States*

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | State of New Jersey; Philip D. Murphy; Gurbir S. Grewal |

| (b) County of Residence of First Listed Plaintiff   N/A | County of Residence of First Listed Defendant   Mercer County |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Joseph J. DeMott, U.S. Department of Justice, Civil Division 1100 L St. NW, Washington, DC 20005   (202) 514-3367 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☒ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
     Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     Another District
     *(specify)*

☐ 6  Multidistrict
     Litigation -
     Transfer

☐ 8  Multidistrict
     Litigation -
     Direct File

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 28 U.S. Code §§ 1373, 1651, 2201(a) |
|---|---|
| | Brief description of cause: Declaratory and injunctive action seeking to invalidate NJ Attorney General Directive 2018-06 |

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☐ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions)*   JUDGE Hon. Freda L. Wolfson | DOCKET NUMBER 3:19-cv-18083-FLW |
|---|---|---|

| DATE 02/10/2020 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

**DESIGNATION OF AGENT FOR SERVICE UNDER LOCAL CIVIL RULE 101.1(f)**

In accordance with Local Civil Rule 101.1(f), the undersigned hereby makes the

following designation for the receipt of service of all notices or papers in this action at

the following address:

    United States Attorney's Office
    District of New Jersey
    Attention:   J. Andrew Ruymann
    Assistant U.S. Attorney
    402 East State Street, Room 430
    Trenton, NJ 08608


DATED:   February 10, 2020                Respectfully submitted,

                                          JOSEPH H. HUNT
                                          Assistant Attorney General

                                          JACQUELINE COLEMAN SNEAD
                                          Assistant Director, Federal Programs Branch

                                          /s/ _Joseph J. DeMott_____
                                          JOSEPH J. DEMOTT
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L St. NW, Room 11218
                                          Washington, D.C. 20005
                                          Tel: (202) 514-3367
                                          E-mail: Joseph.DeMott@usdoj.gov

                                          Counsel for the United States